IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kenneth Syncere Rivera a/k/a Kenneth Rivera, </br></br>      Plaintiff, </br></br>      v. </br></br>Agency Director William R. Byars, Jr.; Warden Robert Stevenson, III; Eugene Keitt, BRCI Mailroom Personnel; Susan H. Fry, BRCI Mailroom Personnel; James Harris, BRCI Mailroom Personnel; SCDC Postal Director Maria Leggins; and Rodney Cox, BRCI Mailroom Designee, </br></br>      Defendants. </br>_____ | Case No. 8:12-cv-02469-JMC-JDA </br></br>**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

      This matter is before the Court on a motion for temporary restraining order filed by Plaintiff [Doc. 21] and a motion for summary judgment filed by Defendants [Doc. 56]. Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983, generally alleging a violation of his constitutional rights when Defendants denied his access to certain publications, did not allow him to send out personal mail, and delivered his mail late. [Docs. 1, 35.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

      Plaintiff filed this action on August 23, 2012 against Defendants William R. Byars, Jr . ("Byars"), Robert Stevenson, III ("Stevenson"), Eugene Keitt ("Keitt"), Susan H. Fry

("Fry"), and James Harris ("Harris").[1] [Doc. 1.] After the Court granted Plaintiff's motion to amend his complaint [Doc. 34], Plaintiff's amended complaint was filed on October 26, 2012 [Doc. 35]. The amended complaint added Defendants Maria Leggins ("Leggins") and Rodney Cox ("Cox"), as well as new factual allegations. [*Id.*] Plaintiff filed a motion for temporary restraining order on October 17, 2012. [Doc. 21.] Defendants filed a response in opposition to the motion for temporary restraining order on November 5, 2012. [Doc. 41.] Defendants filed a motion for summary judgment on January 17, 2013. [Doc. 56.] On January 18, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 57.] Plaintiff filed a response in opposition to the motion for summary judgment on February 14, 2013. [Doc. 79.] The motions are now ripe for review.

## BACKGROUND

Plaintiff, who was incarcerated at Broad River Correctional Institution ("Broad River") at the time of the alleged events giving rise to this action,[2] alleges that, beginning on August 24, 2011, he received a South Carolina Department of Corrections ("SCDC") Form 10-6, notifying Plaintiff he was being denied certain publications, some of which Plaintiff alleges he had previously been allowed to receive. [Doc. 1 at 3–4, 7–9.] More specifically,

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on August 23, 2012. [Doc. 1-5 at 1 (envelope stamped by prison mailroom; postmark dated August 23, 2012).]

[2]Plaintiff was transferred to Perry Correctional Institution ("Perry") during the pendency of this action. [*See* Docs. 54 (notice of change of address, indicating Plaintiff was moved to Perry), 81–83 (notices of change of address, indicating Plaintiff was moved within Perry).]

Plaintiff alleges he was denied the "South Chicago Abc Zine Distro" on August 24, 2011, and he had previously received this publication on eight occasions; he was denied a publication from "Anthropological Prison Outreach Library" on September 23, 2011, and he had previously received this publication on three occasions; he was denied a publication from "Rising Sun Press" on March 13, 2012; and he was denied the "South Chicago Abc Zine Distro" on April 4, 2012, and on the same day, he received a publication from "Rising Sun Press," though he had been denied this publication numerous times before. [*Id.*] Plaintiff further alleges that, on March 2, 2012, Leggins faxed a correspondence policy stating that "no legal mail envelopes will no longer be accepted at head quarters and what is considered legal and privilege mail." [Doc. 35 at 4.] Plaintiff appears to allege this policy applied only to Plaintiff. [*Id.* (stating "no one else have nor is it in the law library").] On July 26, 2012, Leggins faxed another correspondence dealing with Plaintiff's name. [*Id.*] Additionally, Leggins told Broad River mail room personnel to "put an end" to indigent inmates in the Special Managment Unit ("SMU") sending out mail if they have no money in their accounts. [*Id.*] Plaintiff alleges that, on August 15, 2012, two of his personal letters were "turned around" because he is "an indigent inmate so [he] cannot send mail out in non-legal and legal envelopes," although he had been allowed to send personal letters for the previous 23.5 months at Broad River; additionally, Plaintiff was allowed to send personal mail the following day. [Doc. 1 at 4, 9.] On September 25, 2012, Plaintiff's outgoing mail was returned to him.[3]  [Doc. 35 at 5.]

---

[3]Plaintiff's complaint and amended complaint also include allegations about grievances Plaintiff allegedly filed and about the delivery of mail, including who delivered mail to Plaintiff's unit and when mail was not delivered at all. [Docs. 1, 35.] Additionally, Plaintiff includes two allegations that do not appear to involve any alleged harm to Plaintiff—on September 26, 2012, another inmate was told his mail was being sent back to him and that a prison staff person had read the letter, and on October 19, 2012, someone else's mail was

3

Plaintiff seeks $10,000 in compensatory damages, $15,000 in punitive damages, an order and/or preliminary and permanent injunction directing Defendants to stop discriminating against Plaintiff and stop interfering with Plaintiff's mail that expresses political opinions, a declaration that the acts and omissions by Defendants violated Plaintiff's rights under the Constitution and laws of the United States, a jury trial, costs, and any additional relief the Court deems just, proper, and equitable.[4]  [Doc. 1 at 5, 10–11; Doc. 35 at 6.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less

---

placed in Plaintiff's room. [Doc. 35 at 4–5.] Finally, Plaintiff includes an allegation that, on September 27, 2012, he was denied copies because of lack of funds in his account. [*Id.* at 5.]

Plaintiff appears to include allegations related to grievances to demonstrate he has exhausted administrative remedies and not to complain about the grievance procedure at Broad River. However, even if Plaintiff instead alleges the grievance procedure violates his constitutional rights, such claim fails because the law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (noting inmate grievance procedures are not constitutionally required) (unpublished table decision).

To the extent Plaintiff alleges his constitutional rights were violated when he was denied copies, such claim fails because Plaintiff does not allege any actual injury. *See Lewis v. Casey*, 518 U.S. 343, 348–55 (1996) (stating that, to establish a violation of constitutional right of access to courts, a plaintiff must show actual injury, such as actual prejudice with respect to litigation).

[4]The Court has combined Plaintiff's numerous prayers for relief but notes that, in his amended Complaint, Plaintiff seeks only $10,000 in punitive damages. [Doc. 35 at 6.]

4

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

6

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**Motion for Temporary Restraining Order**

In his motion for a temporary restraining order, Plaintiff asks the Court to order Defendants to stop tampering with Plaintiff's mail and to deliver Plaintiff's legal and privileged correspondence the day it is delivered to Broad River. [Doc. 21.] However, because Plaintiff is no longer incarcerated at Broad River [*see* Docs. 54 (notice of change of address, indicating Plaintiff was moved to Perry), 81–83 (notices of change of address, indicating Plaintiff was moved within Perry)], and all of his allegations concern his incarceration at Broad River [*see* Docs. 1, 35], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Accordingly, Plaintiff's motion for temporary restraining order should be found as moot.

**Motion for Summary Judgment**

*Claims for Injunctive and/or Declaratory Relief are Moot*

As an initial matter, as discussed above, because Plaintiff is no longer incarcerated at Broad River, his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade*, 407 F.3d at 248–49. Plaintiff's claims for monetary damages, however, survive his transfer from Broad River, *id.*, and as public officials, Defendants are subject

to suit for damages in their individual capacities[5] in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

### *Claims Related to Mail*

Plaintiff alleges Defendants are violating Plaintiff's constitutional rights by withholding certain allegedly political publications Plaintiff receives in the mail and restricting what Plaintiff may mail out. [Docs. 1, 35.] Defendants contend Plaintiff does not have a valid First Amendment claim because his rights are not absolute and have been reasonably restricted. [Doc. 56.]

A prisoner enjoys a First Amendment right to receive and send mail, *see Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989), but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest

---

[5]To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

of security, regulate the relations between prisoners and the outside world." *Thornburgh*, 490 U.S. at 408.  Thus, a prisoner's First Amendment right to receive mail is subject "to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996); *see also Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding against First Amendment challenges regulations that authorize prison officials to inspect incoming or outgoing non-legal mail for contraband).

  Defendants contend Plaintiff is not permitted to receive certain publications because of his classification in SMU and that these restrictions apply to all SMU inmates to "protect public safety, institutional order, [and] security."  [Doc. 56 at 4 (alteration in original).] Defendants have provided the affidavit of Keitt, the postal director/mailroom supervisor at Broad River, who avers that mail is processed in accordance with SCDC Policy PS-10.08, which provides that inmates housed in SMU are not permitted to receive publications including newspapers, magazines, newsletters, and periodicals.  [Doc. 56-1 at 1–2 ¶¶ 3, 5; 8 § 9.1.]   Keitt also avers that SCDC Policy PS-10.08 does not mandate any deadline by which incoming mail must be delivered to inmates but provides that SCDC's goal is to distribute letters to inmates within 24 hours of receipt.  [*Id.* at 2 ¶ 8; 4 § 5.1.] Moreover, the policy states that indigent inmates[6] will be provided two date-stamped envelopes on a monthly basis to be used for sending mail not weighing more than one ounce per envelope, and the inmate's account will not be debited for these supplies.  [*Id.* at 4 § 4.2.1.]  The policy further states that inmates may use the materials for general, legal, or privileged

---

[6]Plaintiff alleges the mail that was returned to him indicated he was an indigent inmate.  [Doc. 1 at 4.]

11

correspondence, but the limit given for general correspondence will not be increased, though additional legal supplies may be provided on a limited basis. [*Id.* at 4 § 4.2.3.] It appears here that Defendants followed prison regulations, including giving Plaintiff notice when he was denied publications and notifying Plaintiff of the reason why his outgoing mail was not sent.

Plaintiff does not contend that SCDC Policy PS-10.08 fails to meet some penological interest or that no alternative avenues remain open for him to exercise his First Amendment rights. The burden of proof is not on Defendants to prove the validity of prison regulations; rather, the burden is on Plaintiff to disprove it. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Plaintiff has failed to do so in this case. Accordingly, Defendants' motion for summary judgment should be granted as to this claim.[7]

---

[7] To the extent Plaintiff alleges his legal mail was opened outside of his presence in violation of his constitutional rights [*see* Doc. 1 at 3 ¶ 3], the Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549 n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). Legal mail should not be opened outside of the presence of the prisoner-addressee. *See Wolff*, 418 U.S. at 575. However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. *Lewis*, 518 U.S. 352–54. To show an actual injury, an inmate must "demonstrate that a non-frivolous legal claim had been frustrated or was being impeded." *Id.* at 353. The prisoner must make specific allegations as to the actual injury sustained. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, even assuming a named Defendant opened and read the mail, which is not specifically alleged, Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being opened outside his presence. Plaintiff fails to allege how his mail being opened when he received it would have prevented Plaintiff from proceeding with his claims.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 56 at 5–6.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of

the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Plaintiff's motion for temporary restraining order be found MOOT and Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 30, 2013
Greenville, South Carolina